# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | | |
|---|---|---|
| WALTER EVERETT MOORE, III | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV619-089 |
| | ) | |
| FNY EPPERSON, *et. al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff, Walter Everett Moore, III, proceeding *pro se* and *in forma pauperis*, brings this 42 U.S.C. § 1983 Complaint against a number of prison officials. Doc. 1. The Court granted plaintiff's motion for leave to proceed *in forma pauperis* (IFP), doc. 4, and he has provided all requested documentation, docs. 6 and 7. The Court now screens the Complaint pursuant to 28 U.S.C. § 1915A.[1]

---

[1] The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321-71, sets forth procedures governing the filing of complaints in federal court by prisoners and other detainees. In cases seeking redress from a government entity or its officials, the PLRA requires a preliminary screening in order to "identify cognizable complaints" and to dismiss, prior to service, any complaint that is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A.

The Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001). In doing so, allegations in plaintiff's Complaint are taken as true

## BACKGROUND

Plaintiff alleges that in January of 2019 he cut himself on his arms. Doc. 1 at 5. He states that Defendants Roper and King were informed of the cuts and that both officers declined to send him for medical treatment. *Id.* He alleges that after the shift change he told Ofc. Newkirk that he had cut himself. *Id.* That officer called for an "OIC"—a term which plaintiff does not define—and then left him. *Id.* When Ofc. Newkirk came back in to check on plaintiff, she returned with Sgt. Dugger who observed plaintiff and had a private conversation with Ofc. Newkirk. *Id.* Ofc. Newkirk attempted to get treatment for plaintiff and told him repeatedly through the night that she did not know why treatment was delayed. *Id.* The following morning Sgt. Sapp and another unnamed officer saw plaintiff's arms and informed him that prior to taking a shower he had to be seen by medical. *Id.* After this final request, plaintiff appears to have been sent for treatment.

Plaintiff cut himself again on January 25, 2019, and an Ofc. Mailin requested treatment but no one responded to her call. Doc. 1 at 6. Plaintiff cut himself again the next day on his neck. *Id.* An Ofc. Michaels observed this, but

---

and construed in the light most favorable to him. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations alone, however, are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

no one provided any aid. *Id.* On January 27, plaintiff cut himself on his arms and a Sgt. Matet refused to call for treatment. *Id.* However, shortly thereafter the mental health nurse, pill-call nurse, and a major came in. *Id.* Plaintiff cut himself in front of the nurse and major who simply walked out the door. *Id.* At least one of the nurses attempted to seek some unknown medical care but it was refused.[2] *Id.*

## ANALYSIS

### I.   Denial of Adequate Medical Care

Liberally construed, plaintiff appears to be bringing denial-of-medical-care claims. However, as pled, his claims are deficient. To offend the Eighth

---

[2]   It is unclear from the Complaint whether this medical care was sought for the cuts themselves or for a psychiatric evaluation. In either circumstance, additional detail is necessary. The Court notes that it may be possible for plaintiff to sustain a claim for deliberate indifference to his serious medical needs as a "cutter" to the extent defendants were aware of the "potential to injure himself." *Stanfill v. Talton*, 851 F. Supp. 1346, 1376 (M.D. Ga. 2012). However, the treatment plaintiff did or did not receive is instructional in making such a finding. *See id*. ("The evidence is just as lacking with regard to [plaintiff's] treatment after he cut himself."). Notably, plaintiff is familiar with the necessary requisite detail as he has successfully survived the frivolity review in this Court before. *See Moore v. Alan*, 2020 WL 247308 at *3 (S.D. Ga. Jan. 15, 2020) (Cheesbro ,Mag. J.) ("Plaintiff's suicidal ideation and Plaintiff's arm wound could both constitute medical needs so obvious that even a lay person would recognize the necessity for medical attention."). Moreover, plaintiff's claims do indicate that he did eventually received some treatment for at least some of his cutting incidents. In cases where medical treatment is provided, albeit on a delayed basis, the *delay* in medical treatment becomes the operative violation and, as a result, the seriousness of the injury and any potential resulting harm can be determinative. *See, e.g.*, *Farrow v. West*, 320 F.3d 1235, 1246 (11th Cir. 2003) (noting that "even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable.") (citations and quotations omitted).

Amendment, a government official must display "deliberate indifference to the serious medical needs of prisoners . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This requires that (1) the prisoner suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). His mere disagreement with the medical care provided does not amount to a constitutional violation. *See McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted) ("However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'").

Plaintiff has failed to plead that he suffered a sufficiently serious injury necessitating medical attention. He alleges that he cut himself, but he provides absolutely no information which would allow the Court to determine the severity of his cuts. *See, e.g., Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1189 (11th Cir. 1994) ("[Plaintiff] has not contended that there was a continued bleeding that would signify an urgent or emergency situation . . . "); *see contra Alsobrook v. Alvarado* 477 F. App'x 710, 712 (11th Cir. 2012) ("delayed treatment of a few hours for bleeding cuts, when there is no justifiable explanation for the delay may equate to deliberate indifference."). They may have been paper cuts, they may have been life threatening, but that

4

information is not provided. Moreover, he never alleges that he suffered harm as a result of his cuts. *See Young v. Holmes*, 2009 WL 2914188, at *3 (S.D. Ga. Sept. 3, 2009) (allegations of head and back injuries resulting from a slip-and-fall without detail as to their extent or necessary treatment cannot support a § 1983 claim); *see also Burley v. Upton*, 257 F. App'x 207, 211 (11th Cir. 2007) ("[L]ower back pain is not the type of serious condition this circuit requires."); *Martin v. City of New York*, 2012 WL 1392648, at *9 (S.D.N.Y. April 20, 2012) ("bodily injuries sustained from a slip-and-fall on a wet floor simply do not rise to the level of a constitutional violation"). However, the allegations suggest that he could remedy these failings by providing additional detail as to his injuries, course of treatment, and any harm that resulted. Accordingly, the Court will afford him a single opportunity to amend his complaint to more fully plead his claim that prison officials were deliberately indifferent to a serious medical need.[3] Plaintiff is **DIRECTED** to file an amended complaint within thirty days

---

[3] "[W]hen a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), overruled in part by *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n. 1 (11th Cir. 2002) (*en banc*)); see also Fed. R. Civ. P. 15(a)(2) (courts should grant leave to amend "freely . . . when justice so requires"); *Seckinger v. Bank of Am., N.A.*, No. CV415-306, 2016 WL 1381814 at *2 (S.D. Ga. Apr. 6, 2016).

from the date of this order correcting the deficiencies noted above.  Failure to comply will result in a recommendation of dismissal

## CONCLUSION

Meanwhile, it is time for plaintiff to pay his filing fee.  His PLRA paperwork reflects $0 in average monthly deposits and a $0 average reserved monthly balance over the three-month period prior to the date of his Prison Account Statement.  Doc. 7.  He, therefore, owes no initial partial filing fee.  *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula).  However, plaintiff's custodian (or designee) shall set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.  In the event that plaintiff is transferred to another facility, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to his new custodian.  The balance due from plaintiff shall be collected by the custodian at all future facilities in accordance with the terms of this Order. A copy of this Order and of the Consent to Collection of Fees form Trust Account shall be served upon plaintiff and his current custodian. The payment portion of this Order is to be implemented

immediately, as it is not subject to the adoption provision of Fed. R. Civ. P. 72(b).

**SO ORDERED**, this 22st day of September, 2020.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA